PER CURIAM.
Pursuant to rule 1-12.1 of the Rules Regulating the Florida Bar, the bar’s board of governors has petitioned the Court seeking adoption of numerous amendments to the bar rules. After hearing oral argument on the petition and after considering that argument as well as the numerous comments and suggestions received concerning these proposed amendments, we adopt, reject, and modify the proposals as discussed in this opinion.*
The first proposal would amend rule 3-7.1 to require an attorney against whom a disciplinary complaint has been made to disclose the fact of the complaint and the nature of the charges to that attorney’s law firm. The board notes that the rules currently require such notice only when a trust account violation is charged and submits that this amendment is needed so that law firms can protect the rights and interests of their clients and of the firms themselves from possible repetitious misconduct. We find this amendment acceptable and therefore amend paragraphs (c) through (g) of rule 3-7.1 as set out in the board’s proposal.
The next proposed amendments are to rule 4-1.5 and deal with fees for legal services and the splitting of fees between lawyers not in the same firm. The proposals divide fees between primary and secondary lawyers on a seventy-five-percent to twenty-five-percent basis, apply this fee limitation only to contingent fee cases, and give further definition to the determination of reasonable fees. The basic proposals for amending rule 4-1.5 came from a special commission for the study of contingent fees and referral practices, created by the board of governors, which met and held hearings numerous times in 1986. The board argues that these proposed amendments are necessary to clarify standards by which reasonable legal fees are to be determined and to set limits on referral fees.
We have received comments from several bar members and a trial lawyers’ group regarding these amendments. The concerns expressed include claims that referral fees are not being abused, that the proposals discriminate by placing restrictions on *972 the right to employ attorneys, and that the proposed amendments will increase brokering rather than restrict it. We acknowledge these concerns, but we believe that there should be some regulation of the brokering of cases and that these proposed amendments are a start toward reaching that end. We therefore adopt the board’s proposed amendments to rule 4-1.5, but, in rule 4-1.5(C), change “shall” to “need” so that hourly rate fees will not be deemed unreasonable per se. We agree with the board that the restrictions on rule 4-1.5 will not apply to nonresident bar members unless those nonresidents practice in matters of Florida law. This opinion does not necessarily apply to court-ordered fees.
Another proposed amendment would add a paragraph to rule 4-3.8, requiring a prosecutor to seek judicial approval prior to issuing a subpoena seeking production of a client’s documents, records, or files from an attorney. The board argues that this amendment is needed to prevent abuses of prosecutorial authority. State and federal prosecutors, as well as the United States Department of Justice, oppose this amendment. They argue that the proposed amendment is unnecessary and that its adoption and implementation would have a chilling effect on the grand jury system. After studying this matter, we refuse to adopt the proposed amendment to rule 4-3.-8.
The next proposed amendment would add a new rule, rule 4-7.3, requiring lawyers who advertise seeking personal injury cases on a contingent-fee basis to have available for prospective clients written information on those lawyers’ qualifications, education, and experience. As originally adopted by the special commission on contingent fees and referral practices, this new rule would have applied to all attorneys who advertise and would have required that attorney advertisements set forth the availability of the information. In adopting this proposed rule, however, the board of governors amended it to apply only to attorneys advertising for personal injury cases on a contingent-fee basis. The board of governors submits that this rule is needed so that prospective clients can make fully informed decisions concerning hiring an attorney.
We have received many comments regarding this proposed rule. A member of the special commission argues that the commission’s proposed rale, rather than the board’s, should be adopted because the board's rule does not further its aim of giving all prospective clients the information needed to make informed decisions about selecting an attorney. A trial lawyers’ group echoes this sentiment and argues that this proposed rule should apply to all attorneys regardless of the type of case involved. Several dozen members of the bar have expressed their dismay at having a certain segment of the bar, i.e., personal injury attorneys, singled out for special and discriminatory treatment.
We agree with the board of governors that prospective clients should have available to them the information required by this proposed rule. We do not find, however, that limiting the rale to personal injury attorneys who work on a contingent-fee basis will fulfill the board’s aim. All consumers should share in the benefits of this rule. Therefore, we reject the board’s proposal and adopt in its place the special commission’s version of rule 4-7.3.
The last proposed amendment would add a new chapter to the bar rules. Under this chapter non-Florida Bar members who are members of the bar in other jurisdictions and who meet certain standards would be allowed to practice law with authorized legal aid organizations for one year while seeking admission to the Florida Bar. The board argues that this new chapter is necessary to help make legal services available to persons who cannot afford them but that this program is not a substitute for bar members’ pro bono work. The bar’s legal services committee agrees with the board, stating that this new program will help alleviate the understaffing and lack of resources which currently plague legal aid organizations in this state. The Florida Board of Bar Examiners, on the other hand, contends that no reasonable need for this program has been demonstrated. Moreover, the bar examiners argue that *973 allowing unlicensed attorneys to practice may not be in the public interest because this proposed program would allow inexperienced attorneys and, possibly, attorneys with histories of serious personal antisocial conduct to practice law without demonstrating their fitness to do so.
There is a serious need of legal aid practitioners in this state. How far this proposal will go toward filling that need is unknown, but we agree with the board that this program may help fill the gap. We therefore adopt the proposed amendment adding chapter 13 to the bar rules.
The amendments adopted in this opinion will be effective at 12:01 a.m., January 1, 1988 and will apply to all contracts entered into on or after the effective date.
It is so ordered.
McDonald, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
Paragraphs (c) through (g) of rule 3-7.1 are amended to read as follows:
(c) Limited disclosure; access to confidential information. Upon request, and to the extent necessary to provide the information required therefor, any portion of the record, as defined in rule 3-7.5(l) and any reports, correspondence, papers, and/or transcripts of hearings furnished to or served upon the respondent and any response in the proceedings shall be provided to:
(1) The Florida Board of Bar Examiners and the comparable body having jurisdiction of an application for admission in another jurisdiction for the purpose of evaluating the applicant’s competency to practice law.
(2) Judicial nominating commissions for the purpose of evaluating an applicant’s qualification for judicial appointment.
(3) The Clients’ Security Fund Committee to assist in preparing its recommendation on the validity of an application for relief.
(4) Any judge of a court of record having a judicial interest in the matter.
(5) A complainant for advice as to the pending status or final disposition of the complaint.
(6) In all cases where a complaint alleges ar-teust fund violation, the present-partners, employed lawyers, professional association shareholders, employed associates, and “of counsel” of the-respondent, as determined by the designated board reviewer, to prevent-further trust fund violations by the respondent.
(7)(6) Any individual or organization for whom a member of The Florida Bar has signed a waiver of confidentiality for the purposes expressed in such waiver.
(d) Limited disclosure of nature of charges to partners and shareholders. The respondent shall disclose to respondent’s present law firm and, if different, respondent’s law firm at the time of the act(s) giving rise to the complaint the fact that a complaint has been filed with The Florida Bar and the nature of the charges against the respondent. The disclosure shall be in writing and shall be in the following form:
A complaint against the undersigned has been filed with The Florida Bar. The nature of the charges are_This notice is provided pursuant to rule 3-7.1(d) of the Rules Regulating The Florida Bar. The notice shall be provided within fifteen (15) days of notice that a complaint has been made and a copy of the above notice shall be served on The Florida Bar.
(d)(e) Limitations on limited disclosure. Disclosures authorized in rule 3-7.1(c) above are subject, in all instances, to the limitations on public disclosures set forth in rules 3-7.1(b)(l) and 3-7.1(b)(2) and are further subject to the following:
(1) The attorney who is the subject of a request for limited disclosure, as described in rule 3-7.1(c), shall forthwith be advised of the content of all reports and information provided to the requesting party.
(2) All confidential information provided shall remain confidential and shall not be disclosed by the recipient thereof except as may be provided in these rules.
*974 (3)A complainant will not be advised of an admonishment accompanying a finding of no probable cause.
fe)(f) Information concerning proceeding. No information concerning the pendency or status of an investigation or other confidential matter shall be given unless authorized by the Supreme Court of Florida or these rules.
(f)(g) Evidence of crime. The confidential nature of disciplinary proceedings and the oath given to witnesses therein shall not proscribe the filing of informations and the giving of testimony before grand juries or other prosecuting authorities by individuals having knowledge of facts indicating the commission of crime.
(g)(h) Confidentiality regarding treatment for alcohol abuse.
(1) Evidence that an attorney has voluntarily sought, received, or accepted treatment for alcoholism or alcohol abuse shall be deemed confidential.
(2) No qualified person furnishing treatment, advisory, consultive, or other services or who offers such services, or with whom an attorney has consulted for the purpose of considering or securing treatment, advisory, consultive, or other services relating to alcoholism or alcohol abuse may give evidence with respect to the consultation or treatment by such attorney in any disciplinary proceeding without the written consent of the attorney(s) affected.
(3) It is the purpose of this paragraph (h) to encourage attorneys to voluntarily seek advice, counsel, and treatment available to such attorney, without fear that such advice, counsel, and treatment, or the fact of its being sought or offered, will or might cause embarrassment in any future disciplinary matter.
Rule 4-1.5 is amended to read as follows:
4-1.5 Fees for legal services.
(A)An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee. (B) A fee is clearly excessive when:
(1)Aafter a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2)The fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a non-client party, or any court, as to either entitlement to, or amount of, the fee.
(B) Factors to be considered as guides in determining the reasonableness of a reasonable fee include the following:
(1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood if apparent to the client that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee, or rate of fee, customarily charged in the locality for similar legal services of a comparable or similar nature;
(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) Whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation.
(C) In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be *975 applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
(D) Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreement, unless found to be illegal, prohibited by this rule, or clearly excessive as defined by this rule.
(Q(E) When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(B)(F) As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (P)(F)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility for the representation to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(a) Any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(b) A contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(a) The contract shall contain the following provisions:
1. “The undersigned client has, before signing this contract, received and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
2. “This contract may be cancelled by written notification to the attorney at any time within three (3) business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney(s) for the work performed during that time. If the attorney(s) have advanced funds to others in representation of the *976 client, the attorney(s) are entitled to be reimbursed for such amounts as they have reasonably advanced on behalf of the client.”
(b)The contract for representation of a client in a matter set forth in paragraph (B)(F)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
1. Without prior court approval as specified below, any contingent fee which exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. 33⅛% of any recovery up to $1 million through the time of filing of an answer or the demand for appointment of arbitrators;
b. 40% of any recovery up to $1 million through the trial of the case;
c. 30% of any recovery between $1 and $2 million;
d. 20% of any recovery in excess of $2 million;
e. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
(i) 33½% of any recovery up to $1 million through trial;
(ii) 20% of any recovery between $1 and $2 million;
(iii) 15% of any recovery in excess of $2 million;
f. An additional 5% of any recovery after notice of appeal is filed or post-judgment relief or action is required for recovery on the judgment.
2. If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in (P)(F)(4)(b)l, the client may petition the circuit court for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of his or her rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under paragraphs (A) and (B).
3.In cases where the client is to receive a recovery which will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney’s fees in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
(c) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as paragraph (B)(F)(5).
(d) As to lawyers not in the same firm, a division of any fee within paragraph (F)(4) shall be on the following basis:
1. To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
2. To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
*977 3. The 25% limitation shall not apply to those cases in which two (2) or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply for circuit court authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel which shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this, section shall contain a certificate showing service on the client and the Florida Bar. Counsel may proceed with representation of the client pending court approval.
4. The percentages required by this section shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of Tthe closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for six (6) years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(E)(G) Subject to the provisions of paragraph (F)(4)(d), A a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) The division is in proportion to the services performed by each lawyer; or^-by written agreement with the client?-each lawyer- assumes joint- responsibility fer-the representation;
(2) The client is advised of and does-not object to the-participation of all the lawyers involved; and
(3) The total- fee is reasonable,
(2) By written agreement with the client:
(a) Each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(b) The agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(F)(H) Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have three (3) business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within three (3) business days of signing the con *978 tract. If you withdraw from the contract within the first three (3) business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the three-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about his or her actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether he or she intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers he or she should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract which includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money which you might have to pay to your lawyer for costs and liability you might have for attorney’s fees to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial *979 must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time, you, the client, believe that your lawyer has charged an excessive or illegal fee, you, the client, have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 904-222-5286, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit.
[[Image here]]

Basis or rate of fee

When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.

Terms of payment

A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See rule 4 — 1.16(d). A lawyer is not, however, required to return retainers which, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4-1.5(P)(F)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.

Contingent fee regulation

Rule 4-1.5(B)(F)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
*980 Rule 4-1.5(B)(F)(4)(b) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4-1.5(P)(F)(4)(b) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(B)(F)(4)(b). Rule 4-1.-5(B)(F)(4)(b) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(B)®(4)(b).
The limitations in rule 4-1.5(P)(F)(4)(b)l.-d. are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4-1.5(D)(F)(4)(b)2. provides the limitations set forth in paragraph (6)(F)(4)(b)l. may be waived by the client upon approval by a circuit court judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee which would exceed rule 4-1.5(A) or (B). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent him or her or the case involves complex, difficult, or novel questions of law or fact which would justify a contingent fee greater than the schedule but not a contingent fee which would exceed rule 4-1.5(B).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands his or her right to have the limitations in rule 4-1.5(P)(F)(4)(b) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim which is the subject of the contract.
The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(B)(F)(4)(b)3. prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.

Division of fee

A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of paragraph (F)(4)(d), ^paragraph (G) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint re *981 sponsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.

Disputes over fees

If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the bar, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages. The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

Referral fees and practices

A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4-1.5(F)(4)(d)2. merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4-1.5(F)(4)(d)3. only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4-1.5(F)(4)(d)3. should only occur in a small percentage of cases arising under rule 4-1.5(F)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(F)(4)(d)3. is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-l,5(F)(4)(d)4. applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in paragraph (F)(4)(d) are to be applicable after appellate counsel's fee is established. However, • the effect should not be to impose an unreasonable fee on the client.
The reference to rule 4-7.4 in the comment to rule 4-7.1 is changed to rule 4-7.5.
The reference to rule 4-7.3 in both the text and comment to rule 4-7.2 is changed to rule 4-7.4.
The reference to rule 4-7.6 in the comment to rule 4-7.2 is changed to rule 4-7.7. Rule 4-7.3 is added to read as follows:
4-7.3 Legal service information.
(a) Each lawyer or law firm that advertises his, her, or its availability to provide legal services shall have available in written form for delivery to any potential client:
*982 (1) A factual statement detailing the background, training and experience of each lawyer and law firm.
(2) If the lawyer or law firm claims special expertise in the representation of clients in special matters or publicly limits the lawyer’s or law firm’s practice to special types of cases or clients, the written information shall set forth the factual details of the lawyer’s experience, expertise, background, and training in such matters.
(b) Whenever a potential client shall request information regarding an advertising lawyer or law firm for the purpose of making a decision regarding employment of the lawyer or law firm:
(1) The lawyer or law firm shall promptly furnish (by mail if requested) the written information described in paragraph (a).
(2) The lawyer or law firm may furnish such additional factual information regarding the lawyer or law firm deemed valuable to assist the client.
(3) If it is believed that the client is in need of services which will require that the client read and sign a copy of the “Statement of Client’s Rights” as required by these rules, then a copy of such statement shall be furnished contemporaneously with the above information.
(c) A sample of the information furnished to clients by reason of this rule shall be retained by the lawyer or law firm for a period of six (6) years after last regular use of the information.
(d) If the lawyer or law firm advertises its services pursuant to rule 4-7.2 or makes a written communication not involving solicitation as defined in rule 4-7.4, the availability of the information delineated in this rule shall be included in the advertising or written communication in the following manner:
(1) Television, radio, and all other electronic advertising shall contain a prominent display or announcement which states substantially the following: “Free Information Concerning Qualifications and Experience Available on Request.”
(2) Each page of any telephone or other commercial directory concerning display type advertising shall contain, at the top, the statement: “You may obtain free written information regarding the qualifications and experience of any (this) lawyer or law firm by calling or writing to the lawyer or law firm during regular business hours.” The cost, if any, of the publication of such statement shall be shared pro rata by all lawyers or law firms purchasing display advertising.
(3)All other print or display advertising of any kind shall prominently contain the statement set forth in the preceding paragraph.
(e) Any factual statement contained in any advertisement or any information furnished to a prospective client under this rule shall not be:
(1) Directly false or misleading;
(2) Impliedly false or misleading;
(3) Fail to disclose material information;
(4) Unsubstantiated in fact; or
(5) Unfair.
(f) Upon reasonable request by the Florida Ear, a lawyer shall promptly provide proof that any statement or claim made in any advertisement, as well as the information furnished to a prospective client as authorized or required by these rules, is in compliance with paragraph (e) above.
(g) A statement and any information furnished to a prospective client, as authorized by paragraph (a) of this rule, that a lawyer or law firm will represent a client in a particular type of matter, without appropriate qualification, shall be presumed to be misleading if the lawyer reasonably believes that a lawyer not associated with the originally retained lawyer or law firm or another law firm will be associated or act as primary counsel in representing the client. In determining whether the statement is misleading, the history of prior conduct by the lawyer in similar matters may be considered.
Comment:
Consumers and potential clients have a right to receive factual, objective information from lawyers who are advertising their availability to handle legal matters. The rule provides potential clients may request *983 such information and be given an opportunity to review that information without being required to come to a lawyer’s office to first obtain that information. Selection of appropriate counsel is based upon a number of factors. However, selection can be enhanced by potential clients having factual information at their disposal for review and comparison.
Rules 4-7.3 through 4-7.6 are renumbered as rules 4-7.4 through 4-7.7.
Chapter 13 is added to read as follows:
Chapter 13
AUTHORIZED LEGAL AID PRACTITIONERS RULE
13-1.1 Purpose. The purpose of this chapter is to expand the delivery of legal services to poor people. This chapter authorizes attorneys licensed to practice law in jurisdictions other than Florida to be certified to practice in Florida for up to one year while employed by a legal aid organization. The attorney so certified must take the next available Florida Bar examination.
13-1.2 Definitions.
(a)An “authorized legal aid practitioner” is any person who:
(1) Was engaged in the active practice of law for three (3) years immediately preceding the application for certification under this chapter; and
(2) Is a member in good standing of the entity governing the practice of law of the state, territory, or the District of Columbia (other than Florida) in which he or she is licensed and has not been disciplined for professional misconduct by the bar or courts of any .jurisdiction within the past fifteen (15) years; and
(3) Has not failed the Florida Bar examination and has not been denied admission to the courts of any jurisdiction during the preceding fifteen (15) years; and
(4) Agrees to abide by the Rules Regulating the Florida Bar and submit to the jurisdiction of the Supreme Court of Florida for disciplinary purposes; and
(5) Neither asks for nor receives compensation of any kind from the person on whose behalf he or she renders legal services hereunder (this shall not prevent the approved legal aid organization from paying compensation to the attorney); and
(6) Is certified under rule 13-1.5.
(b) An “approved legal aid organization” for the purposes of this chapter is a not-for-profit legal aid organization which is approved by the Supreme Court of Florida as set forth herein. A legal aid organization seeking approval from the Supreme Court of Florida for the purposes of this chapter shall file a petition with the clerk of the Supreme Court of Florida certifying that it is a not-for-profit organization and stating with specificity:
(1) The structure of the organization and whether it accepts funds from its clients;
(2) The major sources of funds used by the organization;
(3) The criteria used to determine potential clients’ eligibility for legal services performed by the organization;
(4) The types of legal and nonlegal services performed by the organization;
(5) The names of all members of the Florida Bar who are employed by the organization or who regularly perform legal work for the organization; and
(6) The existence and extent of malpractice insurance which will coyer the authorized legal aid practitioner.
(c) A "supervising attorney” as used herein is an active member of the Florida Bar who directs and supervises an authorized legal aid practitioner engaged in activities permitted by this chapter. The supervising attorney must:
(1) Be employed by or be a participating volunteer for an approved legal aid organization; and
(2) Assume personal professional responsibility for supervising the conduct of the matter, litigation, or administrative proceeding in which the authorized legal aid practitioner participates.
*984 13-1.3 Activities.
(a)An authorized legal aid practitioner, in association with an approved legal aid organization and under the supervision of a supervising attorney, may perform the following activities:
(1) Appear in any court or before any administrative tribunal in this state on behalf of a client of an approved legal aid organization if the person on whose behalf the authorized legal aid practitioner is appearing has consented in writing to that appearance and a supervising attorney has given written approval for that appearance. The written consent and approval shall be filed in each case and shall be brought to the attention of a judge of the court or the presiding officer of the administrative tribunal;
(2) Prepare pleadings and other documents to be filed in any court or before any administrative tribunal in this state in any matter in which the authorized legal aid practitioner is involved. Such pleadings also shall be signed by the supervising attorney;
(3) Prepare legal documents, provide legal advice, and otherwise engage in the practice of law; and
(4) Engage in such other preparatory activities as are necessary for any matter in which he or she is involved-
lb) The presiding judge or hearing officer may, in his or her discretion, determine the extent of the authorized legal aid practitioner’s participation in any proceeding. 13-1.4 Supervision and limitations.
(a) An authorized legal aid practitioner must perform all activities authorized by this chapter under the direct supervision of a supervising attorney.
(b) Authorized legal aid practitioners permitted to perform services under this chapter are not, and shall not represent themselves to be, active members of the Florida Bar licensed to practice law in this state.
(c) The limitation on compensation for the authorized legal aid practitioner contained in rule 13-1.2(a)(5) shall not prevent the approved legal aid organization from reimbursing the authorized legal aid practitioner for actual expenses incurred while rendering services hereunder nor shall it prevent the approved legal aid organization from making such charges for its services as it may otherwise properly charge. The approved legal aid organization shall be entitled to receive all court-awarded attorney's fees for any representation rendered by the authorized legal aid practitioner.
13-1.5 Certification.
(a) Permission for an authorized legal aid practitioner to perform services under this chapter shall become effective upon filing with and approval by the clerk of the Supreme Court of Florida of:
(1) A certification by an approved legal aid organization stating that the authorized legal aid practitioner is currently associated with that legal aid organization and that an attorney employed by or participating as a volunteer with that organization will assume the duties of the supervising attorney required hereunder;
(2) A certificate from the highest court or agency in the state, territory, or district in which the authorized legal aid practitioner is licensed to practice law certifying that the authorized legal aid practitioner is a member in good standing and has a clear disciplinary record as required by rule 13-1.2(a)(2). The certificate shall also advise of any pending complaints and/or investigations involving the authorized legal aid practitioner; and
(3) A sworn statement by the authorized legal aid practitioner that he or she:
a. Has read and is familiar with chapter 4 of the Rules Regulating the Florida Bar as adopted by the Supreme Court of Florida and will abide by the provisions thereof;
b. Submits to the jurisdiction of the Supreme Court of Florida for disciplinary purposes, as defined by chapter 3 of the Rules Regulating the Florida Bar and by rule 13-1.7, and authorizes his or her home state to be advised of any disciplinary action taken in Florida; and
c. Will take the next available Florida Bar examination.
*985 13-1.6 Withdrawal or termination of certification.
(a) Permission to perform services under this chapter shall cease immediately upon the earliest of the following events:
(1) The passage of one year from the date of the authorized legal aid practitioner’s certification by the Court, provided, however, the certification of any authorized legal aid practitioner who has passed the Florida Bar examination shall continue in effect until the date he or she is admitted to practice; or
(2) Failure of the Florida Bar examination; or
(3) The filing with the clerk of the Supreme Court of Florida of a notice by the approved legal aid organization stating that:
a. The authorized legal aid practitioner has ceased to be associated with the organization, which notice must be filed within five (5) days after such association has ceased; or
b. Certification of such attorney is withdrawn. An approved legal aid organization may withdraw certification at any time and it is not necessary that the notice state the cause for such withdrawal. A copy of the notice filed with the clerk of the Supreme Court of Florida shall be mailed by the organization to the authorized legal aid practitioner concerned.
(4) The filing with the clerk of the Supreme Court of Florida of a notice by the Supreme Court of Florida, in its discretion, at any time, stating that permission to perform services under this chapter has been revoked. A copy of such notice shall be mailed by the clerk of the Supreme Court of Florida to the authorized legal aid practitioner involved and to the approved legal aid organization to which he or she had been certified. The certified legal aid attorney shall have fifteen (15) days to request reinstatement for good cause.
(b) If an authorized legal aid practitioner's certification is withdrawn, for any reason, the supervising attorney shall immediately file a notice of such action in the official file of each matter pending before any court or tribunal in which the authorized legal aid practitioner was involved. 13-1.7 Discipline.
(a) In addition to any appropriate proceedings and discipline which may be imposed by the Supreme Court of Florida under chapter 3 of these Rules Regulating the Florida Bar, the authorized legal aid practitioner shall be subject to the following disciplinary measures:
(1) The presiding judge or hearing officer for any matter in which the authorized legal aid practitioner has participated may hold the authorized legal aid practitioner in civil contempt for any failure to abide by such tribunal’s order in the same manner as any other person could be held in civil contempt; and
(2) The Supreme Court of Florida or the approved legal aid organization may, at any time, with or without cause, withdraw certification hereunder.
(b) The Florida Bar shall notify the appropriate authority in the authorized legal aid attorney’s home state of any disciplinary action taken against the authorized legal aid practitioner.
13-1.8 Sunset provision. This chapter shall expire and all certificates issued hereunder shall likewise expire on January 1, 1993 unless sooner reenacted by the Supreme Court of Florida.

 The amendments themselves are set out following the opinion.